23 C.C.P.A. (Patents)

**KRUEGER v. GAUTIER et al.**

**SAME v. CHABOT.**

**Patent Appeals Nos. 3623, 3624.**

Court of Customs and Patent Appeals.
June 1, 1936.

Hammond & Littell, of New York City (Edmund Quincy Moses, Nelson Littell, and Clarence M. Crews, all of New York City, and Joseph H. Milans, of Washington, D. C., of counsel), for appellant.

Irving U. Townsend, Jr., of Boston, Mass. (Emery, Booth, Townsend, Miller & Weidner and Lawrence G. Miller, all of Boston, Mass., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The present appeals originally involved two interferences, namely, interferences Nos. 60,810 and 60,811. The appeals were designated here as cases Nos. 3623 and 3624, respectively. On the hearing here, counsel for Krueger, the appellant in both cases, moved to dismiss the appeal in No. 3623, and moved to dismiss the appeal in No. 3624 as to counts 1, 2, and 3 thereof. No objection was interposed by the other parties, and accordingly the motions are allowed.

This leaves for consideration only counts 4 and 5 in interference No. 60,811, case No. 3624, Theodore H. Krueger v. Ephraim H. Chabot. These counts are as follows:

"4. In a strip serving machine of the type described, a supply of gummed tape, strip moistening means, strip severing means, strip feeding means including means to grasp the strip and feed it from the machine, a visual measuring device for measuring the length of strip fed out consisting of a stationary measuring scale in the form of a dial, a pointer movable on the dial in synchrony with the feeding of the tape and means to return the pointer to normal position when the feeding of the tape is stopped.

"5. In a strip serving machine of the type described, a supply of gummed strip, moistening means, a strip severing means, strip feeding means including means to grasp the strip and feed it from the machine, a visual measuring device for measuring the length of strip fed out consisting of a stationary measuring scale in the form of a dial, a pointer movable on the dial in synchrony with the feeding of the tape and means to return the pointer to normal position when the feeding of the tape is stopped, said means comprising a spring secured to the machine and to the indicator."

On August 9, 1927, the appellant presented an application to the United States Patent Office, praying that a patent be issued to him for a claimed new and useful improvement in tape serving machines, and on January 7, 1930, letters patent No. 1,-742,603 were issued to him on said application. The application upon which this patent was issued was said to be a continuation in part of appellant's co-pending application, serial No. 696,907, which was filed March 4, 1924, and which ripened in-

to patent on August 9, 1927, as No. 1,638,-816.

An interference was declared on December 19, 1930, between the said letters patent No. 1,742,603 of appellant, and a reissue application of the appellee, serial No. 488,167, filed October 11, 1930, for a reissue of patent No. 1,732,635, dated October 22, 1929, issued on an application dated October 12, 1925.

As the interference was originally declared, it consisted of three counts which were claims 1, 2, and 3 of Krueger's patent No. 1,742,603. An application under rule 109 of the Patent Office for the addition of counts to the interference having been allowed, counts 4 and 5 were added to the interference by order of the examiner on June 9, 1932. These counts were claims 4 and 5, respectively, of appellant's patent No. 1,742,603. The interference was therefore redeclared with five counts, only two of which are now involved in this appeal, namely, counts 4 and 5. Afterwards, various motions, the consideration of which is not important to the issues here involved, were made by the parties and appear in the record. Among these was a further motion to amend the interference and to add a reissue application filed by Krueger, which motion was denied by the Examiner of Interferences. Then followed an untimely motion on the part of Krueger to dissolve the interference and to amend the same, and to add counts, which motion was also denied by the Examiner of Interferences. A petition was then filed with the commissioner, by the appellee, to reformulate the issues of the interference, which was also duly denied by the commissioner. Other motions were made and actions taken, a further recapitulation of which is deemed unnecessary.

Finally, testimony having been taken, the matter was argued, and on November 14, 1933, a decision of the Examiner of Interferences was rendered awarding priority of invention of the subject-matter in issue on all counts to Ephraim H. Chabot, the appellee. Krueger afterwards made a motion to reopen the interference and take further testimony, which was denied.

An appeal was taken to the Board of Appeals by the party Krueger from the decision awarding priority to Chabot, and, upon hearing, the Board of Appeals affirmed the decision of the Examiner of Interferences. From that decision, the appellant has brought the matter to this court.

In order to understand the exact issues presented, it will be necessary to detail, at considerable length, the substance of the decisions of the Patent Office tribunals. The Examiner of Interferences stated that the appellant Krueger, on April 15, 1931, had moved to shift the burden of proof in the interference, relying upon an earlier patent, No. 1,638,816, the application for which was filed March 4, 1924, as hereinbefore recited. The motion was denied without prejudice to its renewal at final hearing, and, on the hearing, Krueger reasserted his right to the benefit of his earlier case. The examiner further states that the party Krueger, in presenting his "case" in patent No. 1,742,603, with respect to the claims corresponding to the counts of the issue here, specifically pointed out to the examiner wherein these claims did not read upon his earlier patent. This position, it is said, was taken in response to a final rejection by the Primary Examiner on the ground of double patenting. From this the Examiner of Interferences here deduces the conclusion: "Presumably its supposed validity constituted the basis for the allowance of the claims in the later case."

Following this, conclusion, the Examiner of Interferences expressed doubt whether Krueger is not estopped to take an opposite position at this time, and held that the counts must be strictly construed in view of the former position taken by Krueger. The Examiner of Interferences was also of the opinion that Krueger's earlier patent, No. 1,638,816, did not support counts 1, 2, and 3 of the interference, because of a failure to disclose certain elements of the strip feeding means and indicator.

As to counts 4 and 5, the Examiner of Interferences made this statement: "Counts 4 and 5 recite means to return the pointer to normal position when the feeding of the tape is stopped. In the early Krueger patent there is no mechanical relation between the return of the pointer and the termination of the tape feeding. In Fig. 6 of the later patent there is an invariable and mechanical relation between these operations. That is, when the upper feeding roller is raised, thus terminating tape feeding, the friction roller 200 is also raised allowing the clock spring 206 to re-

turn the pointer to initial position. But in the earlier Krueger construction no such relation exists. The termination of tape feeding and the return of the pointer are here independently controlled at the will of the operator, and the pointer is not necessarily returned upon termination of tape feeding. There is certainly no mechanism for effecting this result, and should it occur, it is due entirely to the sequence of operations which the operator elects to perform on the machine. In fact, in the normal machine operation frequently the pointer is not returned to normal position after a termination in tape feeding. For example, if twenty inches of tape are to be served, after sixteen or sixteen and one-half are issued the feeding is stopped and the tape is released. But the carriage and pointer are then only partially returned, not to normal position, but only far enough to make up the remaining few inches to be fed. The early Krueger patent does not support counts 4 and 5."

Its benefit was, therefore, denied to Krueger as to all counts in the interference.

The Examiner of Interferences also held that although Krueger had attempted to prove a conception and reduction to practice at earlier dates than those shown on behalf of the party Chabot, in his opinion such a showing had not been made; that while certain machines had been made by Krueger, notably one made and delivered to the National Carbon Company for experimental use in July, 1924, and others for the National Biscuit Company in 1923, these machines did not embody the subject-matter of the counts here in issue, and said counts would not read upon the same. Finally, the Examiner of Interferences held that Chabot filed his application on October 12, 1925, and that even if the party Krueger be accorded conception of the invention as the result of his work on his modified Exhibit R machine, constructed in 1924, he could not prevail, because he was without diligence from Chabot's filing date of October 12, 1925, until Krueger himself filed in August, 1927.

A petition to reopen and for rehearing was filed by the party Krueger on February 3, 1934, and denied. This petition was accompanied by the affidavits of John E. Towner and Mills W. Waggoner. These affidavits attempted to supply the element of proof that the so-called Exhibit R was successfully operated during the summer

of 1924. A motion for the reopening of the interference, and for the introduction of further evidence, was then offered and finally denied by a decision of the Board of Appeals on March 8, 1934. The matter then came up on its merits to be heard before the Board of Appeals, which affirmed the decision of the Examiner of Interferences. The Board of Appeals was of opinion that the Examiner of Interferences, in his decision, was influenced to a large extent by certain remarks made by counsel for the appellant in connection with an amendment of July 1, 1929, in the proceedings which ripened into patent No. 1,742,-603, and the board further expressed the view that the appellant was now making a contention that the counts should be read so broadly as to read upon the disclosure of his earlier application for said patent No. 1,638,816, whereas the board makes note of the fact that said patent No. 1,-742,603 was granted because of appellant's suggestion made at that time to the office that the subject-matter disclosed in the application which ripened into patent No. 1,-742,603 was not the same as that disclosed in his earlier case. In view of this situation, the board felt it was warranted in construing the counts strictly "in the light of those figures of the later Krueger patent drawings which do not appear in the earlier patent."

There is considerable discussion in the briefs to the effect that the party Krueger should not be now permitted to assert counts 4 and 5 because of a supposed estoppel arising from the concessions made by Krueger's representatives at the time said patent No. 1,742,603 was in its earlier stages in the Patent Office. However, the Board of Appeals did not take the position that any such estoppel had arisen, but viewed the matter, as had the Examiner of Interferences, in the light that the said counts 4 and 5 do not read upon the disclosure made by Krueger in his earlier application leading to patent No. 1,638,816. The Board of Appeals was also of opinion that Krueger had failed to prove that he had constructed any machine, prior to Chabot's entrance into the field, upon which said counts 4 and 5 will read. Especially was this thought to be true as to the machine referred to as Exhibit R which was made in 1924, and used by the National Carbon Company. This machine the board considered and held to be an abandoned experiment. The board also held specifically that if Krueger had con-

ceived the invention which is involved in the issue here prior to Chabot's entrance into the field, he had been entirely without diligence during the necessary period to entitle him to priority. Finally, the Board of Appeals was of the opinion that the counts of the present interference are confined to the showing in Figure 6 of said patent No. 1,742,603.

In a succeeding decision on a motion for rehearing rendered by the Board of Appeals on September 27, 1934, specific attention was given to counts 4 and 5, and the board made this statement: "Appellant points out as to counts 4 and 5 they are worded somewhat differently from counts 1, 2 and 3 in that they recite 'a pointer movable on the dial in synchrony with the feeding of the tape.' In counts 1, 2 and 3 there is recited means to move the strip feeding means and an indicator in synchrony. Appellant urges the expression in counts 4 and 5 is readable on the 1923 Krueger tape serving machine (Exhibit F). It is our view these expressions are closely related and if it be conceded, as it seems to be, our holding as to the expression in counts 1, 2 and 3 is proper, the same reasoning applies to the expression in counts 4 and 5. Obviously the strip feeding means and the strip itself move in unison and when the statement is made in one count the strip feeding means and the indicator are in synchrony and in another the indicator and the strip are moved in synchrony, there is no substantial distinction, as we view it. Therefore, if it is inappropriate in connection with the early Krueger constructions to refer to the strip feeding means and the indicator as moved in synchrony, it is also inappropriate to recite that the strip and the indicator are moved in synchrony."

The testimony of the party Krueger indicates that he began his work on a tape dispenser in 1917, in co-operation with his brother Alfred, and at that time produced a tape dispensing machine in which the tape was drawn from the roll across a moistener, manually. This machine was never produced or sold commercially. In 1923 Krueger's company began the delivery of a tape carton sealer with the trade name "Counterboy." This had a visual measuring scale on the side of the machine, immediately underneath the path of a pointer, which pointer was attached to a feed carriage, which gripped and impelled the tape through a moistener and out of the machine. These machines, of which there were several types as shown by samples in evidence, each consisted of a metal frame with an inclined top portion, in which tape from a roll held in the interior of the machine was led downward and at the bottom of the inclined portion passed under a cutter and over a moistening device. One of these machines is designated here as Exhibit 16. The method of operation was as follows: The feed carriage was mounted on two parallel rods on either side of the tape strip and had two gripping jaws which, upon manual depression of the feed carriage, gripped the forward end of the tape. A downward movement of the feed carriage then drew the tape along with the carriage. When a sufficient length of tape had been thus drawn through and out of the device, it was cut off and, upon release of the hand from the feed carriage, a spiral spring drew the carriage back to the place from which it started. On the left side of the feed carriage, and later on both sides thereof, a scale or scales was or were mounted upon the machine along which the pointer attached to the feed carriage moved, and by means of which the operator could visually ascertain what length of tape had been fed forward.

Krueger testifies that in 1923 he conceived the invention, the subject-matter of the controversy here, and that this conception was of a motor-driven machine operating upon a considerably different principle. One of these machines is in evidence, and is known as Exhibit R. This exhibit, it is said, was delivered to the Long Island City plant of the National Carbon Company on or about July 12, 1924, and was returned to Krueger on July 24, 1924. When this machine was delivered to the National Carbon Company, it had no measuring device thereon, except a scale upon the table supporting it, but, according to Krueger, such a device was put on within a short time after its return. As thus completed, it is said to have been of the same type and design as is illustrated by a drawing, Figure 6, in appellant's patent No. 1,742,603. In this type of machine, the tape was fed by a strip feeder. The tape passed between the rollers, the lower one of which was continuously driven from a motor. The upper roll was journaled in an arm and suitably connected by a link to another arm which, upon being depressed, would draw the upper of the two rolls into contact with the lower con-

stantly rotating roll, and as the gummed strip passed therethrough, frictionally engaged the tape and forced it to discharge through the machine. A foot treadle was provided for depressing the arm which controlled the feeding of the strip, and also actuated a cutting means. As soon as the operator's foot was raised from the foot treadle, the arm raised the upper roll and the feed stopped. Upon the outside of the machine, as shown by said Figure 6, a pointer and rotary dial was arranged. When the feed roller was depressed and came in contact with the tape, a friction roller mounted on the shaft of the upper feed roller also came into contact with the periphery of a disc at the side of the machine, and, at the moment when the tape began to be fed, the disc was moved forward relative to a scale and in synchrony with the feeding of the tape so that an arrow on the disc would indicate the amount of tape fed out at any time.

By means of a clock spring attached to the inner face of the disc, as soon as the feed roller was raised by the release of the foot pedal, the disc immediately returned to its first position.

In Krueger's first patent, No. 1,638,816, there is no disclosure of any measuring device or mechanism for returning the pointer to its original position, except that described as embodied in Exhibit 16 hereinbefore mentioned. In other words, Krueger's earlier patent depended for the return of its measuring pointer upon the manual release of the feed carriage. This return had nothing to do with the feed of the strip. The strip, it is true, was drawn forward by the hand of the operator by means of the feed carriage. However, as we view it, it entirely failed to comply with the language of the counts in controversy, namely, "a pointer movable on the dial in synchrony with the feeding of the tape and *means to return the pointer to normal position when the feeding of the tape is stopped*." (Italics ours.)

This brings us to a consideration of Krueger's application which ripened into patent No. 1,742,603. Here in the specification, and drawings 1 to 4, inclusive, Krueger showed again his earlier disclosure of a dispensing machine. In Figures 5 to 7, inclusive, a motor-driven machine was illustrated with the second method of operation, as hereinbefore described by us. In the specification, spe-

cific attention is given to both methods of operation. Here, also, for the first time, appear claims 4 and 5, which embody the particular matter in controversy here. It is made to appear from the proceedings before the Patent Office at that time that the Primary Examiner was of opinion that the issuance of patent No. 1,742,603 would be double patenting, in view of Krueger's patent No. 1,638,816. However, in view of Figure 6 of the appellant's drawings in the later case, and in view of counsel's express statement that the claims of this application read upon said Figure 6, and that said Figure 6 contained new and patentable subject-matter, the application went to issue and patent No. 1,742,603 was the result.

As we understand the matter, the Patent Office tribunals have not attempted to apply any estoppel as against Krueger, because of the suggestions which were made to the tribunals of the Patent Office at that time, in that respect. However, these suggestions, made at the time the later patent was issued, are cited as circumstances which throw light upon the meaning to be given to the claims of that patent, now counts of this interference.

As we view the matter, there is no ambiguity in counts 4 and 5 of the interference now before us. It seems quite apparent that there is no part of the specification in Krueger's earlier patent, or in his drawings therein, which discloses the subject-matter of counts 4 and 5, nor is there anything in the disclosure in his later patent which does so, except Figures 5 and 6 thereof, and the specification referring thereto. In these earlier disclosures of Krueger, the tape was pulled forward until feeding was stopped and the pointer did not thereupon return to normal position. Something further had to be done, namely, the feed carriage must be released, and, when returned to its position, the pointer did also. In the later type of machine, however, the pointer returned immediately, as soon as feeding was stopped, and nothing further was necessary than to stop the feed. In the earlier type of machine the feeding could be progressive, down the entire inclined plane, and might consist of one or several impulses, but not until the conclusion of the last impulse, and the release and return of the carriage, did the pointer return to its normal position. With the second type of machine the pointer returned, irrespective of how many im-

pulses were given the onward moving tape before it was finally severed and removed.

These limitations may not be disregarded. Especially is that true when it seems quite evident that this must have been, and was, one of the principal reasons for the issuance of the second patent.

■ It was freely conceded by counsel for the appellant on the hearing before this court that if counts 4 and 5 did not read upon the earlier disclosure made by appellant's patent No. 1,638,816, then the appellant was not entitled to priority. Irrespective of this concession, we are convinced that this is true. The record entirely fails to supply the preponderance of proof which is imposed upon Krueger as the junior party.

The only machine which Krueger built prior to his filing date in 1927, which embodied the subject-matter involved in counts 4 and 5, was the machine known as Exhibit R, and which was built for the National Carbon Company, as hereinbefore stated. It evidently was not satisfactory, and, after it was returned from the National Carbon Company, Krueger stated that it was fitted with a dial and pointer which would make it fully satisfy the language of said counts. Krueger and his brother Alfred testified that thereafter the machine was exhibited at the National Business Show held in October, 1925, and nothing was thereafter done with or about it until Krueger filed his application on August 9, 1927. In other words, Krueger made no attempt to commercialize his invention, if he had made one. There is no satisfactory proof in the record that this machine, as fitted with this measuring dial and pointer, was ever thoroughly tested or reduced to practice. We are in agreement with the conclusion of the Board of Appeals that it was, at best, an abandoned experiment, and was never reduced to practice until the constructive reduction brought about by Krueger's filing on August 9, 1927. Asked by counsel what was done after the alleged reduction to practice in 1924, this appears in the record:

"Q. 126. Were machines of the type of Exhibit R equipped with the measuring device such as shown in Figure 6 of your patent No. 1,742,603 sold by your company? A. No. We discovered a patent which we felt might be a hindrance to our selling this machine since some of the claims in that patent might have been in-

terpreted as reading on this device, and so we decided to take a loss on the expense incurred in building this model and began building another model which was subsequently put on the market."

It is also argued by counsel for Krueger that a second patent ought not to issue to Chabot, and that if it is true that Krueger's patent No. 1,742,603 is held to read only on Figure 6 of his drawings, Chabot cannot make the counts of this interference, and hence is not entitled to a patent. This question of law, as we understand it, is not here involved; there having been no motion to dissolve because of Chabot's inability to make the counts of the interference.

■ We, therefore, conclude that the decision of the Board of Appeals should be and it is affirmed. The order is that the appeal in No. 3623, and the appeal as to counts 1, 2, and 3 in No. 3624, be dismissed. As to counts 4 and 5 in No. 3624, the decision of the Board of Appeals is affirmed.

Affirmed.